UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHELLE FOUST,<br>   Plaintiff,<br><br>  v.<br><br>KYOCERA SGS PRECISION<br>TOOLS, INC.<br>   Defendant. | Case No: 1:23-cv-00318-CCB-SLC |

## OPINION AND ORDER

Before the Court is a motion for summary judgement filed by Defendant Kyocera SGS Precision Tools Inc ("KSPT"). Michelle Foust sued KSPT under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, arguing that KSPT discriminated against her on the basis of sex by treating her differently under its company drug-use policy than a similarly situated male employee. KSPT seeks summary judgment on Ms. Foust's claim.

### I. RELEVANT BACKGROUND

The following facts are largely not in dispute. Any disputed facts are either not material or will be addressed in the substantive analysis.

Michelle Foust was employed by KSPT as a Quality Assurance Technician from early 2020 until January 2022, when she was fired after testing positive for Marijuana on a drug test. (ECF 21-2 at 6, 13; ECF 21-1 at 5, ¶ 20). KSPT's medical division, where Ms. Foust worked, is located in Columbia City, Indiana, and produces medical devices for the orthopedic marketplace. (ECF 23 at 1, ¶ 2; ECF 21-1 at 2, ¶ 4).

As part of a commitment to "a safe, healthy, and drug and alcohol-free workplace," KSPT maintains a substance abuse policy that prohibits "being under the influence of alcohol or illegal drugs while on KSPT premises during working hours or while performing Company business." (ECF 21-1 at 3, ¶¶ 8–9). KSPT employees are subject to random alcohol and drug tests conducted and interpreted by a third-party provider. (*Id.* ¶ 10). If the employee's initial alcohol or drug test is positive for the presence of alcohol or drugs, the employee is suspended without pay for at least three days and the testing facility will conduct a confirmation test. (*Id.* ¶¶ 11, 13). If the confirmation test returns a negative, then the employee is paid for the leave (*Id.* ¶ 14).

A test is considered positive if both the initial and confirmation tests are positive for the presence of alcohol or drugs. (*Id.* ¶ 12). If the confirmation test returns a positive and the employee has no prior violations of the company's drug policy, then an employee has the opportunity to commit to a Last Chance Agreement ("Agreement"). (*Id.* ¶ 17). Under the Agreement, the employee agrees: "(1) to abstain from the use of illegal substances; (2) to actively participate in the Company's EAP [Employee Assistance Program];[1] (3) to unannounced, periodic follow-up drug testing for a period of one year from the date of the agreement; and (4) to comply with all company policies, practices, and procedures." (*Id.* ¶ 18). If the employee fails to comply with the Agreement or fails a drug test for a second time, they are fired. (*Id.* ¶ 19).

---

[1] The Plaintiff calls this program the "LifeServices Employee Assistance Program" ("LEAP") while the Defendant calls it the "Employee Assistance Program" ("EAP"). (ECF 28 at 1; ECF 22 at 3). However, these appear to be the same thing. This Court will use "Employee Assistance Program," since that is the term which is used in the Last Chance Agreement document itself. (ECF 21-1 at 8).

2

On December 3, 2021, Ms. Foust and a male Process Engineer ("Engineer") tested positive for illegal substances when KSPT's third-party vendor performed a random drug screening at the facility. (ECF 21-1 at 5, ¶¶ 21–22). Both were suspended without pay for three days. (*Id.*). When the confirmation tests came back positive, they both signed the Agreement and continued working pursuant to the substance abuse policy. (*Id.* at 5, ¶ 24). Ms. Foust avers that she stopped using marijuana "gummies" on December 8, 2021, the same day she signed the Last Chance Agreement. (ECF 29-2 at 2, ¶ 8; ECF 29-1 at 5, ¶ 23). [2]

On January 12, 2022, both employees were administered another drug screen, as required by the Agreement. (ECF 21-1 at 5, ¶ 25; ECF 21-2 at 43, 74–79). In the initial tests, both tested positive for illegal substances. (ECF 21-1 at 5, ¶¶ 26–27). KSPT's Human Resources Director ("Director") avers that after receiving the confirmation test results from the Medical Review Officer ("MRO") and learning that Ms. Foust's results were above a cutoff threshold which was indicative of someone who had merely tapered off use without stopping altogether (ECF 32 at 4; ECF 32-1 at 4, 6), she determined that Ms. Foust had failed to comply with the Agreement because it required Ms. Foust to abstain from the use of illegal substances, not just "taper off," and so she terminated her employment. (ECF 32-1 at 1, ¶ 3).

---

[2] Ms. Foust completed the Employee Assistance Program as required by the Agreement. (ECF 21-2 at 25–26, 33–34, 73). There is nothing in the record concerning whether the Process Engineer completed the Employee Assistance Program.

The Director also avers that the Engineer's confirmed results demonstrated that he had ceased using drugs albeit with some of the substance still in his system, and thus she concluded the Engineer had not violated the Agreement, qualifying him to return to work. (ECF 21-1 at 6, ¶ 29; ECF 32-1 at 1–2, ¶ 4). KSPT's decision to terminate Ms. Foust while retaining the Engineer is the basis for Ms. Foust's discrimination claim. On March 31, 2022, Ms. Foust filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF 6-1). The EEOC issued a right-to-sue letter on March 31, 2023. (ECF 6-2). On June 22, 2023, Ms. Foust filed her complaint initiating the current lawsuit. (ECF 6).

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments

4

for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III. ANALYSIS

In order to prevail on summary judgment, KSPT must show that there are no genuine disputes of any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, Ms. Foust does not assert any direct evidence of sex discrimination. She is proceeding under the indirect method for establishing discrimination under Title VII, the *McDonnell Douglas* burden-shifting framework. (ECF 28 at 5–6). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 676 (7th Cir. 2006). But regardless of what analysis a court uses, "the fundamental question at the summary judgement stage is simply whether a reasonable

jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) (emphasizing that this is true even when using *McDonnell Douglas*).

To show that a reasonable jury could find discrimination and avoid summary judgment under *McDonnell Douglas*, Ms. Foust has an initial burden of production to show evidence that indicates a prima facie case for discrimination. *See Simpson v. Beaver Dam Cmty. Hosp., Inc.*, 780 F.3d 784, 790 (7th Cir. 2015). If she does this, the burden of production shifts to KSPT, which must provide evidence that it had a nondiscriminatory reason for firing her. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). If KSPT succeeds, the burden of production then shifts back to Ms. Foust, who must show that KSPT's reason for firing her was merely pretextual. *See id.* Here, Ms. Foust argues that she has established a prima facie case of discrimination based on sex, and that KSPT's reason for firing her is pretextual. KSPT disputes that Ms. Foust has shown evidence of a prima facie case of discrimination, and argues that even if she has, it has provided a non-pretextual and nondiscriminatory reason for her termination.

A. **Prima Facie Case**

In order to show a prima facie case for discrimination under *McDonnell Douglas*, Ms. Foust must produce evidence that: (1) she was a member of a protected class, (2), she was meeting KSPT's legitimate expectations, (3) she suffered an adverse employment action, and (4) a similarly situated employee outside the protected class was treated more favorably. *See Igasaki*, 988 F.3d at 958 (citing *McDonnell Douglas*, 411 U.S. 792). At the prima facie stage, the plaintiff's prima facie burden is "not onerous"—it is one of

6

production, not persuasion. *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). *See also Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015) (noting that on summary judgment, "the plaintiff must first meet his burden of production on the familiar four-part test for establishing a prima facie case); *Fisher v. Transco Services-Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir. 1992) ("While we view the facts in the light most favorable to the nonmoving party, there is an affirmative burden of production on the nonmoving party to defat a proper summary judgment motion."). This means that to avoid summary judgment on a prima facie element, the plaintiff must produce enough evidence that a "reasonable fact-finder could find that [they] have met their burden on the issue." *Barbera v. Pearson, Inc.*, 906 F.3d 621, 629 (7th Cir. 2018) (quoting *Coleman*, 667 F.3d at 846 (7th Cir. 2012)). *See also Hill v. Burrell Commc'ns. Grp., Inc.*, 67 F.3d 665, 667 n. 1 (7th Cir. 1995*)* ("Establishing the prima facie case only shifts the burden of production to the defendant; the burden of proof rests with the plaintiff throughout. The practical consequence of this distinction . . . at the summary judgment stage is that the defendant need only produce some evidence of a nondiscriminatory motive to meet its burden of production.").

      Here, Ms. Foust is undisputedly a member of a protected class because she is a woman. Additionally, no one disputes that Ms. Foust suffered an adverse action when she was fired. The parties disagree, however, as to whether Ms. Foust was meeting KSPT's legitimate expectations when she was terminated, and whether the Engineer qualifies as a "similarly situated" employee. In order to avoid summary judgment, Ms. Foust must produce evidence that she satisfies these elements of the prima facie case. *See*

7

*Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 463 (7th Cir. 2014) (when evaluating a defendant's motion for summary judgment under *McDonnell Douglas*, "a plaintiff has the burden of establishing a prima facie case of discrimination").

The first contested element of the prima facie case is whether Ms. Foust produced evidence that she was meeting KSPT's legitimate employment expectations. This inquiry does not ask whether an employee failed to meet an employer's legitimate expectations at any point in the past, but "whether the employee was performing well at the time of . . . termination." *Igasaki*, 988 F.3d at 959 (quoting *Peele v. Mut. Ins.*, 288 F.3d 319, 329 (7th Cir. 2002)). Here, Ms. Foust has produced evidence suggesting that she was meeting KSPT's legitimate expectations. After failing her drug test the first time, she signed a Last Chance Agreement with KSPT, in which she promised to refrain from further drug use, as well as to participate in a drug and alcohol awareness counseling program (the "Employee Assistance Program" or "EAP"). (ECF 21-1 at 5, ¶ 23; *id.* at 8). It is uncontested that Ms. Foust completed the counseling program. (ECF 21-2 at 25–26, 33–34, 73). Ms. Foust also designated an affidavit in which she testifies that she ceased drug use on December 8, 2021, the day she signed the Last Chance Agreement. (ECF 29-2, ¶ 8). Last, she produces her contrasting test results from December 3, 2021, and January 12, 2022, as evidence that her testing levels had significantly dropped by the time of the second test. (ECF 32-1; ECF 29-5; ECF 29-6). Ms. Foust argues that the decrease in drug levels between these two tests is evidence that, as she claims, she ceased using drugs after signing the Last Chance Agreement on December 8, 2021, and thus was meeting KSPT's legitimate expectations at the time of termination. (ECF 22 at 5, 6).

8

KSPT makes two arguments for why Ms. Foust has not met the prima facie burden of production with regard to legitimate expectations. First, it argues that Ms. Foust necessarily must have been failing to meet employee expectations because she admitted to using drugs at the time she failed her first test, in violation of company policy. (ECF 22, at 8–9). But the legitimate expectations inquiry does not look to past failures—it looks to the employee's performance at the time of termination. *Igasaki*, 988 F.3d at 959. Here, KSPT set a standard for its legitimate expectations regarding drug use when it offered Ms. Foust the opportunity to participate in the Last Chance Agreement. (ECF 22 and 3, 5). And Ms. Foust has produced evidence that she was abiding by that standard.

Second, KSPT argues that the result of Ms. Foust's second failed drug test is irrebuttable evidence that she was not meeting legitimate expectations by failing to comply with the Agreement. (ECF 32, at 2–3). But this is not an undisputed question of fact—Ms. Foust's main argument is that the analysis used in evaluating this test was unfair and discriminatory. And to support this claim, she provides evidence that her testing levels were significantly lower than the previous test, as well as her statement that she ceased using drugs on the day she signed the Agreement. (ECF 32-1; ECF 29-5; ECF 29-6; ECF 29-2 at 2). On summary judgment, the prima facie burden of production required for *McDonnell Douglas* does not require Ms. Foust to prove that she was meeting legitimate expectations but merely produce evidence from which a jury could reasonably conclude that she was. *See Transco Services-Milwaukee, Inc.*, 979 F.2d at 1242; *Chi. Transit Auth.*, 806 F.3d at 905. Here, her completion of the Employee Assistance Program,

9

affidavit testimony, and lowered test levels constitute that evidence. (ECF 21-2 at 25–26, 33–34, 73; ECF 32-1; ECF 29-5; ECF 29-6; ECF 29-2 at 2).

Moreover, when a plaintiff contends that a defendant applied its legitimate expectations standards in a discriminatory manner, courts will move past the legitimate expectations analysis as long as the plaintiff is able to "raise an inference that an employer applied its legitimate employment expectations in a disparate manner." *Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014) (quoting *Peele*, 288 F.3d at 329)). This is because when "an employee who failed to meet expectations claims that she has been treated differently from a male employee who similarly failed to meet expectations," *Orton-Bell*, 759 F.3d at 777, or "the people judging the plaintiff's performance [are] the same people accused of discriminating against her," it often "makes little sense . . . to discuss whether she was meeting her employer's reasonable expectations." *Curry v. Menard, Inc.*, 270 F.3d 473, 477–78 (7th Cir. 2001) (quoting *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605 (7th Cir. 2001)). Here, by showing that both she and the Engineer had positive results on the January 2022 initial and confirmation tests, while only she was fired, Ms. Foust has met the burden of production sufficient to raise an inference of discrimination. (ECF 22 at 6). *See Orton-Bell*, 759 F.3d at 777.

The second contested element of the *McDonnell Douglas* prima facie case is whether Ms. Foust provided evidence that she was similarly situated to a male employee who was treated more favorably than she was. *See Igasaki*, 988 F.3d at 957. In a disparate treatment claim, the analysis of whether the plaintiff was similarly situated to other employees "calls for a flexible, common-sense examination" of whether the similarly situated

10

employee is comparable to the plaintiff in "all material respects." *Coleman*, 667 F.3d at 846 (first quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007), and then quoting *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009) (internal quotations omitted)). Though it is not a "magic formula," courts often look to (1) whether employees "dealt with the same supervisor," (2) "were subject to the same standards" and (3) "engaged in similar conduct." *Coleman*, 667 F.3d at 847 (2012) (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008), and then quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008)). Summary judgment on this question is appropriate only when "no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Barbera*, 906 F.3d at 629 (quoting *Coleman*, 667 F.3d at 846). While it is contested whether Ms. Foust and the Engineer engaged in similar conduct, the fact that they both had positive preliminary drug tests followed by decreased levels on final analysis raises a reasonable possibility that they did engage in similar conduct. Ms. Foust also produces evidence that she and the Engineer both "dealt with the same supervisor" and were "subject to the same standards," *see Coleman*, 667 F.3d at 846–47, demonstrating that both she and the Engineer were subject to the same substance abuse policy, the same Last Chance Agreement, and that the same human resources director (Loretta McKinley) was the decisionmaker as to the company's response to their test results. (ECF 21-1 at 2, 4–5). *See Coleman*, 667 F.3d at 846. Ms. Foust produces enough evidence to satisfy this step of the *McDonnell Douglas* test. *See Barbera*, 906 F.3d at 629.

## B. Non-discriminatory Reason

Ms. Foust has met her burden of production at the prima facie stage of *McDonnell Douglas*. Therefore the burden of production shifts to KSPT to articulate a nondiscriminatory reason for firing her. See *Igasaki*, 988 F.3d at 957. Ms. Foust does not dispute that KSPT has provided a facially nondiscriminatory reason for the adverse action. Specifically, KSPT points to the existence and enforcement of its Last Chance Agreement as evidence that its reason for firing Ms. Foust was nondiscriminatory.

The Last Chance Agreement signed by Ms. Foust is an associate's last time to remain employed at KSPT while addressing his/her illegal substance abuse. (ECF 21-1 at 4, ¶¶ 17–18). Failure to comply fully with the terms of this agreement will result in immediate termination. (*Id.* ¶ 19). Under the Last Chance Agreement, the associate agrees to abstain from the use of illegal substances. (*Id.* ¶ 18). KSPT's Human Resources Director testified in a declaration that she learned that the Engineer's Second Drug Test results, while positive, were indicative that he had ceased using drugs, albeit with some of the substance still in his system. (ECF 21-1 at 6, ¶ 29). Based on that information, the Director determined that the Engineer had not violated the Last Chance Agreement, permitting him to return to work. (*Id.* ¶ 31). At the same time, the Director learned that Ms. Foust's results had a "concentration level [which] was suggestive of her tapering off of the illegal substance," but which was still "above the cut off threshold" for determining whether an employee had violated the Last Chance Agreement. (ECF 32-1 at 1, ¶ 3). Put another way, Ms. Foust's results "were indicative of her not ceasing use" of the illegal substance. (ECF 21-1 at 6, ¶ 30). The Director testified that based on this information, "[she] honestly

believed that [Ms. Foust] had violated KSPT's Substance Abuse Policy and her Last Chance Agreement" and thus decided to "terminat[e] her employment." (*Id.* ¶ 33). KSPT has satisfied its burden of production by showing that its decisions were based on a nondiscriminatory reason—the Human Resource Director's implementation of the requirements in KSPT's Last Chance Agreement with employees.

### C. Pretext

Because KSPT has produced evidence that it had a nondiscriminatory reason for its decision, the burden shifts to Ms. Foust to provide evidence that this reason was pretextual, thus creating a genuine issue of material fact. *See Igasaki*, 988 F.3d at 957. To do this, she must "identify weaknesses, implausibilities, inconsistencies, or contradictions" in KSPT's account such that "a reasonable person could find [it] unworthy of credence." *Coleman*, 667 F.3d at 852 (quoting *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007)). To show pretext, a plaintiff can either use direct evidence that an employer "was more likely than not motivated by a discriminatory reason" or indirect evidence that "an employer's proffered reasons are not credible" by demonstrating that "the reasons are factually baseless" or were "insufficient to motivate the discharge." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999) (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993)). The bar for demonstrating that a defendant's reasons are pretextual is high—the plaintiff must provide evidence that they are "a lie, specifically a phony reason for some action." *Chatman v. Bd. of Educ. of Chi.*, 5 F.4th 738, 746 (7th Cir. 2021) (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)). Flawed reasons are not enough. *Brooks v. Avancez*, 39 F.4th 424, 435 (7th 2022).

Ms. Foust argues that the analysis of the test results was "absurd" and "not based on reality, medical science, or common sense." (ECF 28 at 8). Against KSPT's designated evidence of the testing analysis and subsequent employment decision, Ms. Foust provides her testimony that she "stopped using illegal drugs on the day [she] signed the [Last Chance] Agreement,"[3] and that she "had not used marijuana since [she] signed the Agreement." (ECF 29-2 at 2, ¶¶ 8, 12).

Ms. Foust asserts that KSPT unreasonably differentiated between her results and the Engineer's because both their tests revealed substance levels that were "significantly decreased." (ECF 28 at 8). But this general similarity overlooks the crucial fact that KSPT designated evidence that the Engineer's second test levels were not the same as Ms. Foust's. (ECF 21-1 at 5, ¶¶29-31). In order to show that KSPT's nondiscriminatory reason was pretextual, Ms. Foust needs to provide evidence that KSPT's analysis of the drug testing results was "factually baseless" and "phony." *E.J. Brach Corp.*, 176 F.3d at 984 (quoting *Russell*, 51 F.3d at 68 (7th Cir. 1995)). She has not done so.

Even accepting as true Ms. Foust's testimony that she stopped using illicit substances on the day she signed the Last Chance Agreement (December 8, 2021) and that Director McKinley's belief was incorrect, "[a]n employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful, so long as the belief was honestly held." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). Ms. Foust has not set forth any evidence that the Director did not honestly believe that her termination decision

---

[3] Ms. Foust signed the Last Chance Agreement on December 8, 2021. (ECF 21-8 at 72).

14

was necessitated by the Last Chance Agreement's requirements, given Ms. Foust's test results. She has also presented no evidence that the testing analysis or the Director's application of the Last Chance Agreement were so unreasonable as to render them likely "phony" or "insufficient." *E.J. Brach Corp.*, 176 F.3d at 983–84. "The focus of a pretext inquiry is whether the employer's reason is honest, not whether it is accurate or wise." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007); *Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 657 (7th Cir. 2023) ("To avoid summary judgment on this claim, [plaintiff] needed to raise a question of fact as to whether the [employer's] justification was an honest explanation for the hiring decision. She has not done so." (citation omitted) (citing *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 778 (7th Cir. 2013)).

"Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Ms. Foust fails to provide evidence from which a reasonable jury could conclude that KSPT's proffered legitimate, nondiscriminatory reason for its termination decision was a pretext for gender discrimination. There is no genuine issue of material fact as to KSPT's reasons for firing her. *See Anderson*, 477 U.S. at 248; *Matsushita*, 475 U.S. at 587.

## IV. CONCLUSION

Because Ms. Foust has provided evidence constituting a prima facia case of discrimination under *McDonnell Douglas*, and KSPT has responded by providing a

15

nondiscriminatory reason for its employment decision, the final burden of production shifts to Ms. Foust to provide evidence that KSPT's nondiscriminatory reason is pretextual, thus allowing a "reasonable jury [to] infer prohibited discrimination." *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (2013). She has failed to produce such evidence; therefore KSPT has met its summary judgment burden of showing that there is no genuine dispute as to any material facts, and it is entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 248; *Matsushita,* 475 U.S. at 587.

For the reasons discussed above, Kyocera SGS Precision Tool's Motion for Summary Judgment is **GRANTED**. (ECF 20).

SO ORDERED on September 25, 2025.

*/s/ Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT